## JOHN H. HARRINGTON *vs.* MOSES WESELOWSKI.

On an issue between A. and B. whether money paid to a collector of internal revenue by B., who owed A. for the price of some liquors, was received by the collector in payment of a tax due from A. to the United States in respect to the liquors, the collector testified, as a witness for B., that he received it in payment of the tax, but had not yet paid it over to the United States because he had been summoned as trustee of A. in a suit against A. by the United States; and further testified that the suit was brought by his procurement. *Held*, that it was competent for A. to show that not the collector, but B. himself, was summoned as trustee in the suit.

CONTRACT for a balance of the price of spirituous liquors sold and delivered to the defendant by the plaintiff, doing business under the name of Boyden & Company. The defendant, in his answer, alleged that on the request and direction of the plaintiff he paid to the United States through William H. McCartney, collector of internal revenue for the third collection district of Massachusetts, $2699.20, " which the plaintiff consented and agreed should be in full satisfaction of any balance claimed to be due from the defendant." Trial and verdict for the plaintiff, in the superior court, before *Putnam*, J., who allowed a bill of exceptions substantially as follows :

" The only fact in dispute at the trial was, whether $2699.20 paid by the defendant to McCartney May 4, 1867, (said McCartney being collector of internal revenue for the United States,) was or not paid over to the United States, through McCartney, by previous authority and consent of the plaintiff, at his request, and for his use. The defendant claimed he so paid it at the request, authority and consent of the plaintiff; and the plaintiff denied such claim, but insisted that it was paid over to McCartney without authority, and not in payment of taxes, but only as security, to prevent a threatened seizure on the defendant's premises, and to be refunded to the defendant if the government should not establish its claim for taxes.

" There was evidence offered by the defendant tending to show that, on or before May 4, 1867, Malachi Stagge was a de·tective for the United States, under the laws for the collection of the internal revenue ; that the plaintiff and the defendant

each had a place of business in Boston, as liquor dealers, 'hat on April 27, 1867, the stock of liquors of the plaintiff in his place of business had been seized by Stagge for not having paid the lawful duty due to the government; that on or before May 4, 1867, Stagge came to the defendant's place of business and threatened him that he would seize the liquors sold to the defendant by the plaintiff, the price of which is the subject of the present suit, and said that he, Stagge, knew as to all the liquors that had been sold as aforesaid, and that part of them were then in the defendant's store, and he·knew where the defendant had sold the remainder, and unless the defendant paid over to the government $2699.20, which Stagge said was due to the plaintiff for the sale of such liquors, he, Stagge, would seize said liquors wherever he could find them, on the ground that said liquors had never paid any excise duty or tax, but had been illegally taken from a bonded warehouse of the United States without the payment of such tax; that thereupon the defendant sent his clerk for the plaintiff to come to his store, and there, in presence of his clerk, told the plaintiff all that Stagge had told the defendant as aforesaid; that the plaintiff, after some talk about it, finally in substance told the defendant that under the circumstances he had better pay the sum of $2699.20, and ordered him to pay that sum to McCartney, the collector, on the plaintiff's account, instead of paying it to Stagge; that the defendant did thereafter, on said May 4, pay said sum to McCartney, and took from him a notice to pay the amount to the government, and a receipt therefor, which was produced and read at the trial. And the defendant also testified that he understood from McCartney that it was to be paid over to the government.

"The defendant called McCartney subsequently as a witness, and he stated that said money was paid to him by the defendant May 4, 1867, and the receipt given; that he had not yet paid it over to the government, but that it stood charged to him on his bonded warehouse account; that it was an absolute payment, and he was responsible for it on his official bond; and that he was also charged for it as trustee in a suit of the gov-

ernment against said plaintiff, in which he had made answer. On cross-examination he was asked if he had ever paid over said money to the United States, to which he replied that he had not. He was then asked why he had not paid it over to the government, if it was paid for taxes; to which he replied that the money was not received in the regular collection of the revenue; that there was no appropriate place for it on his books as collector; that he received large sums of money, at times, not strictly as taxes; that he received this money as money due on spirits for taxes belonging to the United States; and that in addition he had suggested to the assistant district attorney of the United States that he should be summoned as a trustee, and had been so summoned, in a suit where the United States was plaintiff and one Boyden defendant, (said Harrington doing and having done business under the name of Boyden & Company,) but that he had told the assistant district attorney not to have him charged as trustee, because he was charged for it on his warehouse account — that the government had charged him with it.

" The plaintiff, against objection of the defendant on the ground that it was collateral, was then permitted by the judge to show from the records of the United States court that Mc-Cartney never had been trusteed in any case where the United States was a party, or Boyden or any one defendant, but that the defendant in this suit was so trusteed in such action; and the plaintiff's counsel pressed the fact that McCartney was not trusteed, in his argument to the jury, on the credibility of said McCartney's statement that it was an absolute payment to him by the defendant. The verdict for the plaintiff was for the full amount of his claim, and the defendant excepted to said direction and ruling, and the admission of said evidence."

G. A. Somerby, for the defendant.

R. M. Morse, Jr., for the plaintiff.

Morton, J. At the trial of this case, the principal question was, whether the sum of $2699.20, paid by the defendant to McCartney, the collector of internal revenue, was so paid by the plaintiff's request, and also whether it was received by

McCartney as a payment of taxes due by the plaintiff to the United States. The defendant called McCartney as a witness, who testified that he received it in payment of taxes due by the plaintiff. He also testified, on the direct examination, that the money had not been paid over to the government; and, to explain this fact, stated that he had been summoned as trustee in a suit brought by the government against the plaintiff. This testimony, that he had been summoned as trustee, was not objected to; and we are of opinion that, if it had been objected to, it could not have been excluded on the ground that it was collateral and immaterial. The main question was, whether he received this money in payment of taxes due by the plaintiff. The fact that he had not paid it over in the usual course of business would, if unexplained, have a tendency to throw doubt upon his testimony. It disclosed conduct of the witness inconsistent with his main statement. And the fact that he had been summoned as trustee would tend to explain this otherwise suspicious circumstance, and thus confirm his testimony upon the main question. These facts were not purely collateral; they were so connected with the chief transaction which was the subject of inquiry as not to be matters wholly foreign to the issue on trial. This being so, it was competent for the plaintiff to contradict the witness by showing that no such trustee suit had been brought as he testified to, but that the suit referred to by him was one in which the defendant in this action was summoned as the trustee of the plaintiff.

There is another view of the case, which leads to the same result. McCartney having testified that he received this money as an absolute payment of taxes due by the plaintiff to the government, it was competent for the plaintiff to show any acts or declarations of his which were inconsistent with this testimony. It appears, from the bill of exceptions, that the trustee suit, in regard to which both parties introduced testimony, was instituted at the request and by the procurement of McCartney. The fact that he procured the defendant to be summoned as the trustee of the plaintiff shows that he then understood that the defendant was indebted to the plaintiff, and is inconsistent with,

and tends to contradict, his statement that the defendant had paid taxes on behalf of the plaintiff, which would extinguish his indebtment. It seems, therefore, that the evidence excepted to was admissible upon this ground. *Exceptions overruled.*